UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 10-61252-CIV-MARTINEZ-BROWN

CENTURY SENIOR SERVICES,
a partnership,

    Plaintiff,

v.

CONSUMER HEALTH BENEFIT
ASSOCIATION, INC., a corporation,
MAGNOLIA TECHNOLOGIES
CORPORATION, a corporation, and
NATIONAL BENEFITS CONSULTANTS,
LLC, a limited liability company,

    Defendants,
-------------------------------------------------
MAGNOLIA TECHNOLOGIES,
CORPORATION, a corporation,

    Counter-Plaintiff,

v.

GUARANTEE TRUST LIFE INSURANCE
COMPANY, a corporation,
CENTURY SENIOR SERVICES, a partnership,

    Counter-Defendants.
_____/

## MAGNOLIA TECHNOLOGIES CORPORATION'S COUNTERCLAIM AGAINST GUARANTEE TRUST LIFE INSURANCE COMPANY AND CENTURY SENIOR SERVICES

Counter-Plaintiff, MAGNOLIA TECHNOLOGIES CORPORATION ("Magnolia"), by and through its undersigned counsel, hereby files its Counterclaims against CENTURY SENIOR SERVICES and GUARANTEE TRUST LIFE INSURANCE COMPANY, and states as follows:

### JURISDICTION AND VENUE

1.    At all times material, Magnolia was and is a Florida corporation, organized and

existing under the laws of the State of Florida, and was authorized to do, and is doing business in Broward County, Florida. Magnolia has its principal place of business in Broward County, Florida and is a citizen of Florida.

2. At all times material, CONSUMER HEALTH BENEFIT ASSOCIATION, INC. ("CHBA") was and is a Missouri corporation, organized and existing under the laws of the State of Missouri, and was and is doing business in Broward County, Florida and is a citizen of Missouri.

3. At all times material, NATIONAL BENEFITS CONSULTANTS, LLC ("NBC") was and is a Florida limited liability company, organized and existing under the laws of the State of Florida, and was and is doing business in Broward County, Florida and is a citizen of Florida.

4. At all times material, CENTURY SENIOR SERVICES ("CSS") was and is a Florida general partnership, organized and existing under the laws of the State of Florida, and was and is doing business in Broward County, Florida.. CSS consists of two partners: a Florida entity and an Illinois entity. CSS is a citizen of Illinois.

5. At all times material, GUARANTEE TRUST LIFE INSURANCE COMPANY ("GTLIC") was and is an Illinois corporation, organized and existing under the laws of the State of Illinois, and was and is doing business in Broward County, Florida and is a citizen of Illinois.

6. Magnolia's counterclaims are for piercing the corporate veil of CSS, civil remedy for theft or exploitation under §772.11, *Florida Statutes*, conversion and unjust enrichment. Every cause of action alleged either seeks damages in excess of $75,000.00, exclusive of interest, costs and attorneys fees, or the subject matter of which is in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

7. The Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds $75,000, exclusive of interest, costs and attorneys fees, and is between citizens of different States. In the alternative, the Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. §1367.

8. Venue is proper in this District because it is the proper venue for the Interpleader action and because CSS, GTLIC, CHBA, NBC and Magnolia all do business in this District. Further, CHBA, NBC and Magnolia entered into a July 2006 contract which gives rise to the claims asserted herein. The contract was entered into in Broward County, Florida and contains a provision designating Broward County as the exclusive venue. Moreover, the causes of action Magnolia is suing upon accrued in Broward County, Florida because the payments were due to be paid in Broward County, Florida.

## GENERAL ALLEGATIONS

9. At all times material, RICHARD S. HOLSON, III ("Holson") was and is an individual residing in the State of Illinois, was and is the President and Chief Executive Officer of GTLIC, and is *sui juris*.

10. At all times material, BARBARA TAUBE ("Taube") was and is the Senior Vice President of Finance and Chief Financial Officer of GTLIC, and was and is responsible for premium collections and commissions for GTLIC, and is *sui juris*.

11. CHBA claims it is a patient advocacy organization that administers the New Health Choice Plan, and claims that it is "dedicated to promote[sic] the availability of consumer benefits to the general public."

12. NBC claims it is the exclusive marketing company of the New Health Choice Plan.

13. GTLIC and/or its subsidiary, Vantage America Solutions, Inc. ("VAS"), played an integral role in implementing the CHBA/NBC business plan and derive a substantial benefit from it.

14. GTLIC directly, and/or through its subsidiaries CSS and VAS, receives as much as 33-50% of an initial sale and/or a continuation of a CHBA plan membership.

15. CHBA and NBC contract with various independent marketing companies to market, sell and promote their products.

16. In or about July 2006, NBC and CHBA offered to allow Magnolia to present and sell the products of NBC and CHBA and to otherwise act as their representative.

17. In consideration for Magnolia acting as NBC's and CHBA's representative and otherwise offering NBC's and CHBA's products for sale to the general public, NBC and CHBA agreed to pay Magnolia commissions on payments NBC and CHBA collected from sales generated by Magnolia.

18. In or about July 2006, Magnolia accepted NBC's and CHBA's offer. The contract executed by Magnolia, NBC and CHBA is attached as *Exhibit "A"* ("the Contract") and is incorporated herein by reference.

19. The Contract provides that "[c]omission checks are issued by Guarantee Trust Life Insurance Company."

20. When Magnolia consummated a sale of any of NBC's or CHBA's products, the consumer would make payments for the product.

21. The funds from consumer payments were and are maintained in an account and were and are readily identifiable.

CASE NO: 10-61252-CIV-MARTINEZ-BROWN
*Magnolia Technologies Corporation's Counterclaim*

22. The funds from consumer payments were and are maintained and/or controlled by GTLIC.

23. GTLIC managed the consumer payments and commissions paid from those payments. In particular, GTLIC issued monthly commission statements to Magnolia, showing the monthly commissions earned. GTLIC issued commission payments to Magnolia pursuant to the monthly commission statements. A copy of the last page of the March 31, 2010 commission statement from GTLIC to Magnolia is attached hereto as *Exhibit "B"*.

24. At all times material, GTLIC issued the commission payments to Magnolia. This procedure continued from approximately July 2006 until March 2010. Magnolia did not receive commission payments for the sale of CHBA and NBC products from any other entity.

25. GTLIC issued the commission payments to Magnolia from the consumer payment funds received.

26. Pursuant to the parties' course of dealing, GTLIC was obligated to remit the commissions earned by Magnolia directly to Magnolia on the 10th of every month. This was done routinely up until April 2010.

27. CHBA and NBC had an obligation to ensure payment of the commissions to Magnolia pursuant to the Contract.

28. On April 10, 2010, approximately $36,500.00 in earned commissions was due to be paid to Magnolia by GTLIC.

29. Without justification or excuse, on April 10, 2010 GTLIC failed to remit the approximately $36,500.00 in earned commissions ("the stolen commissions") that was due to be paid to Magnolia.

30. CHBA and NBC failed to comply with their obligation to ensure payment of these commissions to Magnolia.

31. On April 23, 2010, Magnolia sent NBC and CHBA the pre-suit notice required by §772.11, Florida Statutes, demanding payment of treble damages in the amount of $109,500.00. NBC and CHBA failed to comply with Magnolia's demand within thirty (30) days. A copy of the April 23, 2010 letter is attached hereto as *Exhibit "C"*.

32. Magnolia sent additional pre-suit demands to NBC and CHBA, but NBC and CHBA failed to comply within thirty (30) days of those demands as well. A copy of these letters is attached hereto as *Composite Exhibit "D"*. The exact amount of commissions due Magnolia will be revealed in discovery since NBC and/or CHBA and/or GTLIC have terminated Magnolia's ability to access the exact amount of commissions.

33. CHBA directed GTLIC, and/or its subsidiaries, not to pay commissions to Magnolia for the months of April 2010, May 2010, June 2010, July 2010 and August 2010.

34. NBC and/or CHBA continue to direct GTLIC, and/or its subsidiaries, not to pay the commissions previously earned by Magnolia.

35. On May 11, 2010, Magnolia sent the pre-suit notice required by §772.11, Florida Statutes, to GTLIC's President and CEO, Richard S. Holson, III, and to GTLIC's Vice President Jeffrey Burman, demanding payment of treble damages in the amount of three times the amount of the commission that came due on May 10, 2010 and the treble amount for the $35,513.50 commission due on April 10, 2010. GTLIC failed to comply with Magnolia's demand within thirty (30) days. A copy of the May 11, 2010 letters is attached hereto as *Composite Exhibit "E"*.

36. On June 18, 2010 Magnolia sent additional pre-suit demands to GTLIC through its counsel, CEO and Vice President, but GTLIC failed to comply within thirty (30) days of these demands as well. A copy of these letters is attached hereto as **Composite Exhibit "F"**.

37. GTLIC continues to withhold, without justification, the commissions previously earned by Magnolia.

38. On July 12, 2010, CSS filed this Interpleader action against Magnolia, CHBA and NBC.

39. CSS claims that it entered into a March 2007 Second Amended Administrative Agreement (the "Second Amended Administrative Agreement") in which CSS agreed to help administer certain benefit plans designed and marketed by CHBA and NBC. A redacted copy of the Second Amended Administrative Agreement as provided by CSS in its Complaint for Interpleader is attached hereto as **Exhibit "G"**.

40. CSS claims that the Second Amended Administrative Agreement requires CSS to "[b]ill, collect and refund, as necessary, all benefit members' fees" and to "calculate, record, and distribute commissions as directed by" CHBA.

41. Prior to the Interpleader action, Magnolia was never made aware of the existence of the Second Amended Administrative Agreement.

42. At all times material, Magnolia received its commissions from GTLIC, and not from CSS, and Magnolia received commission statements from GTLIC and not CSS.

43. The Second Amended Administrative Agreement is a sham contract, as Magnolia's commissions from July 2006 to March 2010 were managed and paid by GTLIC, and not CSS. Therefore, the Second Amended Administrative Agreement was not employed as per its terms.

CASE NO: 10-61252-CIV-MARTINEZ-BROWN
*Magnolia Technologies Corporation's Counterclaim*

44. GTLIC is using the Second Amended Administrative Agreement and CSS to divert the stolen commissions and hide GTLIC's wrongful conduct as to Magnolia's stolen commissions.

45. GTLIC has control over Magnolia's commissions, either directly or through its subsidiary or agents, and is wrongfully withholding the commissions while GTLIC benefits financially from Magnolia's sales.

46. All conditions precedent to the filing of this action have occurred and/or have been waived.

## COUNT I - PIERCING THE CORPORATE VEIL OF CSS

47. This is an action by Magnolia against CSS and GTLIC to pierce the corporate veil of CSS, the subject matter of which exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

48. Magnolia realleges the allegations contained in paragraphs 1 through 46 as though fully set forth herein.

49. CSS is in actuality the instrumentality and/or alter ego of GTLIC.

50. CSS is a Florida general partnership, consisting of two (2) partners. One of the partners of CSS is the Glenview Group, LLC, an Illinois limited liability company. At all times material, the sole member of the Glenview Group, LLC was and is GTLIC.

51. Upon information and belief, at all times material, GTLIC controlled the operation and management of the Glenview Group, LLC.

52. The Glenview Group, LLC is a sham LLC and/or is also an instrumentality/alter ego of GTLIC.

53. GTLIC, CSS and the Glenview Group, LLC share the same principal business address: 1275 Milwaukee Ave, Glenview, IL 60025.

54. GTLIC, CSS, and the Glenview Group, LLC share an officer: Barbara Taube.

55. At all times material, Taube was and is the CFO and Senior Vice President of Finance of GTLIC, the Treasurer of the Glenview Group, LLC and the Secretary and Treasurer of CSS.

56. GTLIC and CSS employ the same attorneys, the law firm of Lewis Brisbois Bisgaard & Smith, LLP.

57. GTLIC, CSS and the Glenview Group, LLC have failed to maintain an arms length relationship between the entities.

58. CSS is not managed by directors or managers, but by GTLIC directly.

59. CSS is controlled solely by GTLIC and all actions of CSS are made solely at the choice and direction of GTLIC.

60. For example, Taube, who is the CFO of GTLIC and is responsible for premium collections and commissions for GTLIC, signed the Second Amended Administrative Agreement on behalf of CSS. CSS now alleges to be holding the commissions that GTLIC has always issued to Magnolia.

61. CSS is operated exclusively in the interest of GTLIC.

62. GTLIC uses CSS merely as a vehicle through which GTLIC exercises its will.

63. The Glenview Group, LLC is operated exclusively in the interest of GTLIC.

64. The existence of CSS is a mere façade for GTLIC dealings.

65. The Glenview Group, LLC is a mere façade for GTLIC dealings.

66. GTLIC uses CSS to mislead and defraud creditors, such as Magnolia.

CASE NO: 10-61252-CIV-MARTINEZ-BROWN
*Magnolia Technologies Corporation's Counterclaim*

67. The Second Amended Administrative Agreement is one example of the GTLIC/CSS deception. Although this agreement is dated March 2007, it was not implemented as written. The Second Amended Administrative Agreement states that CSS is to "[b]ill, collect and refund, as necessary, all benefit members' fees" and to "calculate, record, and distribute commissions as directed by" CHBA. However, Magnolia never received any commissions from CSS. Magnolia received commission statements and commission payments from GTLIC from approximately July 2006 to March 2010. Therefore, GTLIC, and not CSS, was managing consumer payments and commissions to Magnolia.

68. Once Magnolia began to confront GTLIC over its involvement with Magnolia's stolen commissions and demand return of the commissions, GTLIC directed its counsel, who is also CSS's counsel, to file this Interpleader action on behalf of CSS. The Interpleader Complaint revealed the existence of the Second Amended Administrative Agreement to Magnolia for the first time.

69. GTLIC diverted the stolen commissions to CSS and is using CSS to divert attention from GTLIC and to shield GTLIC from liability for its wrongful acts, including its conversion and theft of Magnolia's commissions.

70. GTLIC is further using CSS to conceal GTLIC's identity and involvement in wrongdoings and in defrauding creditors such as Magnolia.

71. GTLIC is trying to absolve itself of liability by having CSS allege that CSS is an "innocent stakeholder and claims no beneficial interest in the commissions."

72. CSS's allegations are false. CSS is the instrumentality of GTLIC, and GTLIC is a wrongdoer and not an innocent stakeholder.

73. GTLIC is using CSS as a subterfuge in these illegal transactions of GTLIC.

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLLC
250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900 * Facsimile (561) 820-2542

74. GTLIC conceals the ownership and/or control of CSS, and conceals that GTLIC is the true owner and/or operator of CSS. For example, in its Complaint for Interpleader, CSS did not disclose GTLIC's involvement and control over CSS and over the commissions at issue. CSS merely alleged that it is a partnership of an Illinois entity and a Florida entity, without disclosing the names and interests involved in those entities. Further, in its Certificate of Interested Parties and Corporate Disclosure Statement filed August 18, 2010 (D.E. 9), CSS listed only the Glenview Group, LLC as its parent company and did not disclose GTLIC's interest in CSS. In fact, CSS did not disclose any of the persons or entities related to CSS that have a financial interest in the outcome of this litigation, as it is required to do.

75. GTLIC diverted assets to CSS, including Magnolia's stolen commissions.

76. GTLIC and CSS reaped large financial gains from Magnolia's sales of CHBA/NBC products.

77. Magnolia suffered damages caused by GTLIC's misuse of CSS in that Magnolia has not been paid its commissions due from GTLIC, since April 2010 and GTLIC has diverted these assets to CSS, its instrumentality and/or alter ego.

78. CSS is dominated by GTLIC in such a way that CSS is the instrumentality and/or alter ego of GTLIC.

79. CSS should be disregarded as a distinct Plaintiff/Counter-Defendant and the alter ego parent company, GTLIC, should be held liable on the obligations and liabilities of CSS, because CSS is being used by GTLIC to escape liability, sanction fraud, and promote injustice.

80. In furtherance of this, GTLIC should be added as a Plaintiff/stakeholder in the Complaint for Interpleader, and GTLIC should be held liable on all claims and defenses asserted in this entire action by or against CSS.

ROSENBAUM MOLLENGARDEN JANSSEN & SIRACUSA, PLLC
250 Australian Avenue South, Suite 500 * West Palm Beach, FL 33401
Telephone (561) 653-2900 * Facsimile (561) 820-2542

WHEREFORE, Counter-Plaintiff, Magnolia Technologies Corporation, demands a judgment against CSS and GTLIC, piercing the corporate veil of CSS, as set forth above, holding GTLIC liable on the obligations and liabilities of CSS for all claims and defenses in this action in its entirety, and for such other and further relief as deemed necessary and proper.

## COUNT II - CIVIL REMEDY FOR THEFT OR EXPLOITATION, §772.11, FLORIDA STATUTES, AGAINST GTLIC

81. This is an action by Magnolia against GTLIC for Civil Remedy for Theft or Exploitation pursuant to §772.11, *Florida Statutes*, the subject matter of which exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

82. Magnolia realleges the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

83. The commissions earned by Magnolia pursuant to the Contract are Magnolia's property.

84. By failing to timely remit earned commissions to Magnolia, GTLIC knowingly obtained or used, or endeavored to obtain or use, Magnolia's property.

85. By failing to timely remit earned commissions to Magnolia even after receiving Magnolia's demand for payment, GTLIC is undertaking this course of action with the felonious intent to permanently deprive Magnolia of its lawful rights to the earned commissions.

86. Alternatively, GTLIC's actions in continually withholding payment of Magnolia's earned commissions are evidence of GTLIC's felonious intent to appropriate Magnolia's property for its own use. GTLIC directly, and/or through its subsidiaries CSS and VAS, has profited from Magnolia's sales and Magnolia's earned commissions.

87. On May 11, 2010 Magnolia sent GTLIC, a demand for the stolen commissions. GTLIC has not retuned any of the stolen commissions.

WHEREFORE, Counter-Plaintiff, Magnolia Technologies Corporation, demands judgment against Counter-Defendant, Guarantee Trust Life Insurance Company, for treble damages as set forth above, together with interest thereon, attorneys' fees pursuant to §772.11, Florida Statutes, costs, and any other relief this Court deems just and proper.

## COUNT III – CIVIL REMEDY FOR THEFT OR EXPLOITATION, §772.11, FLORIDA STATUTES, AGAINST CSS

88. This is an action by Magnolia against CSS for Civil Remedy for Theft or Exploitation pursuant to §772.11, *Florida Statutes*, the subject matter of which exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

89. Magnolia realleges the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

90. The commissions earned by Magnolia pursuant to the Contract are Magnolia's property.

91. CSS claims to be holding Magnolia's commissions.

92. By failing to timely remit earned commissions to Magnolia, CSS knowingly obtained or used, or endeavored to obtain or use, Magnolia's property.

93. By failing to timely remit earned commissions to Magnolia even after CSS became aware of Magnolia's demand for payment and/or of Magnolia's demand for payment from CSS's controlling entity GTLIC, CSS is undertaking this course of action with the felonious intent to permanently deprive Magnolia of its lawful rights to the earned commissions.

94. Alternatively, CSS's actions in continually withholding payment of Magnolia's earned commissions are evidence of CSS's felonious intent to appropriate Magnolia's property for its own use. CSS has profited from Magnolia's sales and Magnolia's earned commissions.

95. On May 11, 2010 Magnolia sent CSS's alter ego parent company, GTLIC, a demand for the stolen commissions. CSS has not retuned any of the stolen commissions.

WHEREFORE, Counter-Plaintiff, Magnolia Technologies Corporation, demands judgment against Counter-Defendant, Century Senior Services, for treble damages as set forth above, together with interest thereon, attorneys' fees pursuant to §772.11, Florida Statutes, costs, and any other relief this Court deems just and proper.

## COUNT IV - CONVERSION AGAINST GTLIC

96. This is an action by Magnolia against GTLIC for conversion, the subject matter of which exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

97. Magnolia realleges the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

98. The commissions earned by Magnolia pursuant to the Contract are Magnolia's property. They are readily identifiable, have been identified and are being held in an account. GTLIC refuses to provide specific information about the account. Therefore, this information will have to be revealed during discovery.

99. By failing to timely remit these earned commissions to Magnolia, GTLIC wrongfully asserted ownership over Magnolia's commissions even though GTLIC had no ownership interest in Magnolia's earned commissions.

100. Despite Magnolia's demand, GTLIC wrongfully refuses to relinquish Magnolia's earned commissions to Magnolia, even though Magnolia has an immediate right of possession to

these earned commissions. GTLIC directly, and/or through its subsidiaries CSS and VAS, has profited from Magnolia's sales and Magnolia's earned commissions.

WHEREFORE, Counter-Plaintiff, Magnolia Technologies Corporation, demands judgment against Counter-Defendant, Guarantee Trust Life Insurance Company, for damages in excess of $75,000.00, together with interest thereon, attorneys' fees, costs, and any other relief this Court deems just and proper.

## COUNT V - CONVERSION AGAINST CSS

101.   This is an action by Magnolia against CSS for conversion, the subject matter of which exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

102.   Magnolia realleges the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

103.   The commissions earned by Magnolia pursuant to the Contract are Magnolia's property. They are readily identifiable, have been identified and are being held in an account. GTLIC refuses to provide specific information about the account. Therefore, this information will have to be revealed during discovery.

104.   CSS claims to be holding Magnolia's commissions.

105.   By failing to timely remit these earned commissions to Magnolia, CSS wrongfully asserted ownership over Magnolia's commissions even though CSS had no ownership interest in Magnolia's earned commissions.

106.   Despite Magnolia's demand, CSS wrongfully refuses to relinquish Magnolia's earned commissions to Magnolia, even though Magnolia has an immediate right of possession to these earned commissions. CSS has profited from Magnolia's sales and Magnolia's earned commissions.

WHEREFORE, Counter-Plaintiff, Magnolia Technologies Corporation, demands judgment against Counter-Defendant, Century Senior Services for damages in excess of $75,000.00, together with interest thereon, attorneys' fees, costs, and any other relief this Court deems just and proper.

### COUNT VI - UNJUST ENRICHMENT AGAINST GTLIC

107. This is an action by Magnolia against GTLIC for unjust enrichment, the subject matter of which exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

108. Magnolia realleges the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

109. By selling NBC's and CHBA's products, Magnolia conferred a benefit on GTLIC. To wit, GTLIC directly, and/or through its subsidiaries CSS and VAS, derived and continues to derive substantial income and other economic benefits from Magnolia's sale of NBC's and CHBA's products.

110. GTLIC appreciated the benefits conferred by Magnolia's sales since it derived and continues to derive substantial income and other economic benefits from Magnolia's sales. GTLIC has been unjustly enriched.

111. It is inequitable for GTLIC to accept and retain the income and other economic benefits conferred by Magnolia from the sale of NBC's and CHBA's products without paying Magnolia its earned commissions.

WHEREFORE, Counter-Plaintiff, Magnolia Technologies Corporation, demands judgment against Counter-Defendant, Guarantee Trust Life Insurance Company, for damages in excess of $75,000.00, together with interest thereon, attorneys' fees, costs, and any other relief this Court deems just and proper.

## COUNT VII - UNJUST ENRICHMENT AGAINST CSS

112. This is an action by Magnolia against CSS for unjust enrichment, the subject matter of which exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

113. Magnolia realleges the allegations contained in paragraphs 1 through 80 as though fully set forth herein.

114. By selling NBC's and CHBA's products, Magnolia conferred a benefit on CSS. To wit, CSS derived and continues to derive substantial income and other economic benefits from Magnolia's sale of NBC's and CHBA's products.

115. CSS appreciated the benefits conferred by Magnolia's sales since it derived and continues to derive substantial income and other economic benefits from Magnolia's sales. CSS has been unjustly enriched.

116. It is inequitable for CSS to accept and retain the income and other economic benefits conferred by Magnolia from the sale of NBC's and CHBA's products without paying Magnolia its earned commissions.

WHEREFORE, Counter-Plaintiff, Magnolia Technologies Corporation, demands judgment against Counter-Defendant, Century Senior Services, for damages in excess of $75,000.00, together with interest thereon, attorneys' fees, costs, and any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Magnolia Technologies Corporation, demands a trial by jury on all claims, defenses and issues so triable in the entire case.

ROSENBAUM MOLLENGARDEN JANSSEN &
SIRACUSA, PLLC
Counsel for MAGNOLIA TECHNOLOGIES CORP
250 Australian Avenue South, Suite 500
West Palm Beach, FL 33401
Phone: 561-653-2900
Fax: 561-820-2542
Email: drosenbaum@rmjslaw.com
Email: mkeegan@rmjslaw.com
Email: tyaques@rmjslaw.com

By: /s/ Daniel S. Rosenbaum
DANIEL S. ROSENBAUM
Florida Bar No. 306037
MARK KEEGAN
Florida Bar No. 0503371
TATIANA YAQUES
Florida Bar No. 673048

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 19, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

ROSENBAUM MOLLENGARDEN JANSSEN &
SIRACUSA, PLLC
Counsel for MAGNOLIA TECHNOLOGIES CORP
250 Australian Avenue South, Suite 500
West Palm Beach, FL 33401
Phone: 561-653-2900
Fax: 561-820-2542
Email: drosenbaum@rmjslaw.com
Email: mkeegan@rmjslaw.com
Email: tyaques@rmjslaw.com

By: /s/ Daniel S. Rosenbaum
DANIEL S. ROSENBAUM
Florida Bar No. 306037
MARK KEEGAN
Florida Bar No. 0503371
TATIANA YAQUES
Florida Bar No. 673048

CASE NO: 10-61252-CIV-MARTINEZ-BROWN
*Magnolia Technologies Corporation's Counterclaim*

**Service list:**

***Joelle C. Sharman, Esq.***
***Rachel K. Krause, Esq.***
Lewis Brisbois Bisgaard & Smith, LLP
1180 Peachtree Street, Suite 2900
Atlanta, GA 30309
*Counsel for Century Senior Services*

2030155